UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GMR SAFETY, INC.<br><br>      Plaintiff,<br><br>   v.<br><br>SYSTEMS, LLC<br><br>      Defendant. | Civil Action No.:<br><br>**COMPLAINT** |

Plaintiff GMR Safety, Inc. (hereinafter "GMR Safety" or "Plaintiff"), through its undersigned counsel, hereby alleges for its Complaint against Systems, LLC (hereinafter "Systems, LLC" or "Defendant"), on Plaintiff's personal knowledge regarding its own activities and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

This is an action for trade dress infringement and false designation of origin under the Lanham Act, common law trade dress infringement, common law unfair competition, false designation of origin, and deceptive trade practices pursuant to Illinois state law.

## THE PARTIES

1. Plaintiff, GMR Safety, Inc. is a corporation organized under the laws of Canada with its principal place of business at 2430, des Enterprises Boulevard, Terrebonne, Quebec, J6X 4J8 Canada.

2. Defendant Systems, LLC, is a Wisconsin corporation with an address at 300 Windsor Drive, Oak Brook, Illinois 60523.

## JURISDICTION AND VENUE

3. This action arises under the Lanham Act of the United States, 15 U.S.C. §1051 et seq., and 15 U.S.C. §1125(a), et seq. as well as the laws of the state of Illinois.

4. This Court has subject matter jurisdiction over the Claims averred in this Action pursuant to 15 U..S.C. §1121 (jurisdiction of federal courts); 28 U.S.C. §§ 1331 (federal question jurisdiction), 1367 (supplemental jurisdiction); and 15 U.S.C. §1125 (common law trade dress infringement and unfair competition).

5. The Court has personal jurisdiction over Defendant, Systems, LLC, because, upon information and belief, Systems, LLC regularly transacts business within the State of Illinois and/or derives significant revenues from the sale of products or services within the State of Illinois, has a place of business in the state, and has committed acts giving rise to this action within this Judicial District.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims in this action occurred in this District and because, upon information and belief, Systems, LLC is jurisdictionally present within this Judicial District.

## FACTS COMMON TO ALL COUNTS

### A. Plaintiff and its POWERCHOCK product

7. Founded in 1996 in Montreal, Canada, GMR Safety has become one of North America's leading wheel restraint systems for safety at loading docks.

8. In the area of transportation and commercial vehicle safety, vehicle restraint systems have long been used to impede forward movement of a wheeled vehicle. Such vehicle

restraint systems include products known as rear impact guard restraint systems, wheel blocking systems, and "chocks." A chock is defined as:

> "a wedge or block for steadying a body (such as a cask) and holding it motionless, for filling in an unwanted space, or for blocking the movement of a wheel."

9. Chocks are characteristically wedge-shaped devices which physically lodge against a wheel if forward motion of the wheel begins to occur. A few different shapes have been employed over the years but most have used a common wedge or triangular ramp shape design. Examples of common chock designs in the industry include the following:



10. In 2003, Plaintiff invented a unique chock design and called this product the POWERCHOCK. The POWERCHOCK product is a vehicle wheel restraint device which is unlike anything else used in the past and unlike anything else lawfully being sold in the market today. The Plaintiff's POWERCHOCK product, in its most popular current iteration, is the following:



3

11. Plaintiff's POWERCHOCK device is well-known among the vehicle restraint safety industry and among the relevant consumers in the marketplace as a pioneering, industry-leading wheel safety product.

12. Since its introduction, total sales of the POWERCHOCK have been in the tens of millions dollars in sales in the United States alone, and throughout the world. Tens of thousands of units are in use in loading docks across America.

13. Plaintiff markets and promotes its POWERCHOCK product through various trade channels, including through distributors, direct sales, and through industry trade shows, which are an important component of the Plaintiff's marketing program.

14. In fact, as part of its marketing efforts, Plaintiff regularly attends trade shows where it presents and promotes its POWERCHOCK product to industry buyers, including the current Modex Trade Show in Atlanta, Georgia.

15. Plaintiff utilizes various media to market and promote its POWERCHOCK product, including safety or logistic/distribution magazines, LinkedIn, etc.

16. Customers of Plaintiff's POWERCHOCK product include: e-commerce, pharmaceutical, food service, retailers, grocers, and other distribution companies and manufacturers, among others.

17. Plaintiff and its POWERCHOCK product have been the subject of numerous customer testimonials that highlight the superiority and quality for which the POWERCHOCK product is known. Plaintiff has also invented various other unique and useful patented features related to the function of the POWERCHOCK design, but not forming a part of Plaintiff's POWERCHOCK Trade Dress.

18. Since its introduction, Plaintiff has made significant financial expenditures to market, advertise, and promote its POWERCHOCK products.

**B. Plaintiff's POWERCHOCK Trade Dress**

19. Plaintiff's POWERCHOCK product uses a unique and highly distinctive trade dress. This recognizable trade dress employs elements which have come to identify, for consumers, the Plaintiff's product in the marketplace, combining many stylized, and source-identifying design elements. The trade dress is comprised of the following distinctive combination of elements which are combined in the unique way:

(a) a generally crested-shaped, vertically oriented body with two differently shaped curves positioned in opposite directions;

(b) a body shape characterized by placement of metal over two side pieces;

(c) a center portion which creates the appearance of a solid piece of metal;

(d) a sloping appearance in the front portion, and a sloping rear portion creating an asymmetrical shape;

(e) metal plates extending over and above the surface of the sloping front portion;

(f) notches or ridges on the leading front edge, and additional (and redundant) notches for ornamental purposes on each side of the chock in order to give the chock an aggressive appearance; and

(g) an arm attachment positioned in the center of the device.

(hereinafter "Plaintiff's Trade Dress" or the "POWERCHOCK Trade Dress")

20. Plaintiff is the owner of the entire rights, title, and interest in the POWERCHOCK Trade Dress.

21. Plaintiff's trade dress rights extend to the overall look and appearance of its POWERCHOCK product.

22. The POWERCHOCK Trade Dress is a distinctive trade dress that identifies Plaintiff as the source of the POWERCHOCK product and serves to distinguish Plaintiff's POWERCHOCK product from wheel chock products of other manufacturers.

23. Plaintiff's POWERCHOCK Trade Dress is non-functional. It is not essential to the use or purpose of a wheel chock device, does not affect the cost or quality of wheel chock devices, and is not required to be used by competitors out of necessity to enable them to design and develop their own alternative wheel chock designs and products, of which there are many alternative combinations.

24. Plaintiff's exclusive use of the POWERCHOCK Trade Dress does not put competitors at a significant non-reputation related disadvantage.

25. It is the combination, arrangement and articulation of the arbitrary and ornamental and non-functional elements of the POWERCHOCK Trade Dress which make the POWERCHOCK product distinctively and immediately identifiable as a product sourced from Plaintiff.

26. As used, the Plaintiff's POWERCHOCK product, which employs the POWERCHOCK Trade Dress, is positioned upon a base plate which is secured to a roadway or flooring service. The Plaintiff's POWERCHOCK device, employing the POWERCHOCK Trade Dress, is then secured to an articulated arm which is attached at the other end to a loading dock or other building facility.

27. The POWERCHOCK Trade Dress has been well recognized since its introduction in the USA since at least as early as 2005.

28. The POWERCHOCK product is renowned for its high quality and is identified and recognized as being exclusively from the Plaintiff.

29. No other competitors in this industry, in the time since the POWERCHOCK product was first introduced, have ever lawfully used this crested chock design nor employed a system using this type of arm arrangement as depicted below:



30. Plaintiff's POWERCHOCK Trade Dress is distinctive and non-functional and comprises a valuable trade dress which serves to identify Plaintiff as the source of wheel chocks that distinguish Plaintiff's POWERCHOCK product from those of its competitors.

31. By virtue of, *inter alia,* Plaintiff's extensive sales, advertising and promotional expenditures, and unsolicited media coverage associated with its POWERCHOCK product, Plaintiff's POWERCHOCK product and POWERCHOCK Trade Dress have secondary meaning among consumers of wheel chocks in the United States.

32. The POWERCHOCK product has been extensively promoted, both in the United States and throughout the world. Customers, potential customers and other members of the logistics and transportation industry recognize Plaintiff and its POWERCHOCK product as a leader in the vehicle wheel restraint industry.

7

**C. Defendant's infringing POWERAMP UXL product and conduct**

33. Defendant Systems, LLC has been involved in the manufacture, sale and installation of loading dock systems since at least as early as the 1960s. They offer a line of products which include things such as power suppliers, dock levelers for a loading dock area, and safety barriers within the dock.

34. For several years, Defendant has been an occasional distributor of Plaintiff's POWERCHOCK products.

35. Thus, Defendant is well acquainted with Plaintiff's POWERCHOCK product, including its distinctive design and trade dress.

36. Defendant is a competitor of Plaintiff regarding the sale of wheel chocks.

37. Upon information and belief, without permission or authorization from Plaintiff, Defendant has manufactured, advertised and is offering for sale a wheel-based vehicle restraint known as the POWERAMP UXL ("Defendant's Infringing Product" or "Defendant's POWERAMP UXL Product") whose features infringe the distinctive POWERCHOCK Trade Dress.

38. Defendant's POWERAMP UXL Product is depicted below:



39. Upon information and belief, Defendant has sold and continues to sell Defendant's Infringing POWERAMP UXL Product utilizing a design which is confusingly similar to the POWERCHOCK Trade Dress.

40. Defendant's infringing product includes the following features:

    (a)     a generally crested-shaped vertically oriented body;

    (b)     a center portion which creates the appearance of a solid piece of metal;

    (c)     a sloping appearance in the front portion, and a sloping rear portion creating an asymmetrical shape;

    (d)     metal plates extending over and above the surface of the sloping front portion;

    (e)     notches or ridges on the leading front edge, and additional notches for non-functional purposes on each side of the chock;

    (f)     a body shape characterized by placement of metal over two side pieces; and

    (g)     an arm attachment positioned in the center of the device to project an aesthetically appealing appearance.

41. Defendant's Infringing POWERAMP UXL Product is a studied copy of the POWERCHOCK Trade Dress as illustrated below in the environment in which the Plaintiff's and Defendant's devices are installed:

 

Plaintiff's POWERCHOCK product              Defendant's POWERAMP UXL product

9

42. Like Plaintiff's POWERCHOCK product, Defendant's POWERAMP UXL Product, which employs Plaintiff's POWERCHOCK Trade Dress, is secured to an articulated arm which is attached at the other end to the loading dock. The fact that each party uses its trade dress in connection with the identical docking and securing system creates an environment where confusion is further likely.

43. Defendant's POWERAMP UXL Product appears exactly in the manner as that of the Plaintiff. Defendant's use of its POWERAMP UXL Product, in addition to being copied from the Plaintiff, is directed to the same or similar customer, and when installed, is virtually identical if not undetectably similar in appearance.



44. Defendant chose to use an articulated arm with identical lengths to those used by GMR, with identically positioned handles and using the identical metallic appearance.

45. The similarities between Plaintiff's POWERCHOCK product and Defendant's POWERAMP UXL Product are beyond coincidence as both products have identical (or nearly identical) measurements, namely 24 inches by 8 inches by $18^{7/8}$ inches.

46. By using the infringing Trade Dress in combination with an identical arm assembly, the manner in which a consumer will encounter the product when prepared for use, further heightens the likelihood of confusion.

47. On information and belief, Defendant's Infringing POWERAMP UXL Product does not perform to the same high standards as the Plaintiff's POWERCHOCK product, which may result in reputation or safety issues, all to the detriment of Plaintiff and consumers.

48. On information and belief, given Defendant's longstanding knowledge of Plaintiff and the popularity of Plaintiff's POWERCHOCK Product, Defendants have knowingly copied the POWERCHOCK Trade Dress.

49. Defendant has intentionally copied or caused to be copied the POWERCHOCK design elements, including the POWERCHOCK Trade Dress, for the specific purpose of infringing on Plaintiff's POWERCHOCK Trade Dress and trading upon Plaintiff's goodwill.

## COUNT I
## TRADE DRESS INFRINGEMENT (15 U.S.C. §1125)

50. Plaintiff restates and reavers each and every allegation contained in the foregoing paragraphs inclusive, and the acts of the defendant asserted therein, as if fully recited in this paragraph.

51. Plaintiff is the owner of the POWERCHOCK Trade Dress.

52. Plaintiff's POWERCHOCK Trade Dress constitutes protectable trade dress under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

53. Plaintiff's POWERCHOCK Trade Dress is distinctive.

54. Plaintiff's POWERCHOCK Trade Dress is non-functional.

55. Plaintiff's POWERCHOCK Trade Dress has acquired secondary meaning among the relevant consuming public.

56. Upon information and belief, long after Plaintiff's adoption and use of the POWERCHOCK Trade Dress on its products, and well after the POWERCHOCK Trade Dress acquired secondary meaning, Defendant began selling, offering for sale, distributing, promoting and advertising its POWERAMP UXL wheel chock products in interstate commerce incorporating infringing copies of the POWERCHOCK Trade Dress.

57. Upon information and belief, Defendant's POWERAMP UXL Product and its overall appearance is a deliberate copy of Plaintiff's POWERCHOCK Trade Dress and product.

58. Defendant's POWERAMP UXL product and overall appearance as used by Defendant in interstate commerce in association with Defendant's POWERAMP UXL Product is substantially indistinguishable from, and confusingly similar to, Plaintiff's POWERCHOCK Trade Dress and Product.

59. Defendant's use of the POWERCHOCK Trade Dress in conjunction with the advertising, promotion, offering for sale, distribution, and sale of Defendant's infringing POWERAMP UXL Product is without the consent of Plaintiff.

60. Defendant's unauthorized use of the POWERCHOCK Trade Dress and the overall appearance of Defendant's POWERAMP UXL Product is likely to cause confusion, mistake, and deception.

61. Defendant's unauthorized use of the POWERCHOCK Trade Dress, including but not limited to the overall appearance of Defendant's POWERAMP UXL Product, is likely to cause confusion among the relevant consuming public in that consumers will believe that Defendant's infringing POWERAMP UXL wheel chock product is the same as Plaintiff's POWERCHOCK

12

product or that Defendant is authorized, sponsored or approved by Plaintiff, and/or that Defendant is affiliated, connected, or associated with or in some way related to Plaintiff.

62. Defendant's acts are intentional and willful.

63. By reason of the foregoing, Defendant has infringed Plaintiff's POWERCHOCK Trade Dress in violation of 15 U.S.C. § 1125(a).

64. Defendant's actions have caused, and continue to cause, Plaintiff irreparable harm.

65. Plaintiff has no adequate remedy at law.

## COUNT II
## UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
## 15 U.S.C. § 1125(a)

66. Plaintiff restates and reavers each and every allegation contained in the foregoing paragraphs inclusive, and the acts of the defendant asserted therein, as if fully recited in this paragraph.

67. Defendant is not now, nor has ever been, associated, affiliated, or connected with, or endorsed or sanctioned by Plaintiff.

68. Defendant's infringing POWERAMP UXL Product sold by Defendant copies Plaintiff's POWERCHOCK Trade Dress and product and constitutes false designation of origin of goods sold by the Defendant and false representations that Defendant's goods are sponsored, endorsed, licensed, or authorized by, or affiliated or connected with the Plaintiff.

69. Defendant, without the consent or authorization of Plaintiff, has adopted and utilized Plaintiff's POWERCHOCK Trade Dress in Defendant's infringing POWERAMP UXL Product.

70. Upon information and belief, Defendant knowingly adopted and used copies,

13

variations, simulations or colorable imitations of Plaintiff's POWERCHOCK Trade dress and product with full knowledge of Plaintiff's intellectual property rights in the POWERCHOCK Trade Dress and product.

71. Defendants copying of the POWERCHOCK Trade Dress and product is an attempt to benefit unfairly from Plaintiff's creativity and goodwill.

72. Defendant has unfairly benefited and profited from Plaintiff's outstanding reputation for high quality products and Plaintiff's advertising and promotion of the POWERCHOCK product.

73. Plaintiff has no control over the nature and quality of the POWERAMP UXL Products sold by Defendant.

74. Among other things, Defendant's distribution, sale, offer of sale promotion and advertisement of its infringing POWERAMP UXL Product adversely reflects on Plaintiff as the believed source of origin thereof.

75. Defendant's commercial activities as described above constitute infringement of Plaintiff's POWERCHOCK Trade Dress, false designations of origin, and unfair competition, in violation of 15 U.S.C. § 1125(a).

76. Defendant's foregoing actions have irreparably harmed Plaintiff.

77. Plaintiff has no adequate remedy at law.

## COUNT III
## COMMON LAW TRADE DRESS INFRINGEMENT

78. Plaintiff restates and reavers each and every allegation contained in the foregoing paragraphs inclusive, and the acts of the defendant asserted therein, as if fully recited in this paragraph.

79. Plaintiff's POWERCHOCK Trade Dress is distinctive.

80. Plaintiff's POWERCHOCK Trade Dress is non-functional.

81. Plaintiff's POWERCHOCK Trade Dress has acquired secondary meaning.

82. Plaintiff had adopted and was using its POWERCHOCK Trade Dress in connection with the advertising and sale of Plaintiff's POWERCHOCK Products long prior to Defendant's adoption and use of its POWERAMP UXL Product design that is incorporated into Defendant's POWERAMP UXL Products that are sold in interstate commerce.

83. The overall appearance of Defendant's POWERAMP UXL Product is confusingly similar to Plaintiff's POWERCHOCK Trade Dress and product.

84. Preventing Defendant from copying the Plaintiff's POWERCHOCK Trade Dress and overall appearance of Plaintiff's POWERCHOCK product would not significantly disadvantage Defendant or other competitors from producing a competitive and cost-efficient wheel chock product, particularly since there are numerous alternative non-infringing designs that are available.

85. Defendant's commercial activities as described above constitute infringement of Plaintiff's POWERCHOCK Trade Dress under common law.

86. Defendant's foregoing actions have irreparably harmed Plaintiff.

87. Plaintiff has no adequate remedy at law.

## COUNT IV
## ILLINOIS COMMON LAW UNFAIR COMPETITION

88. Plaintiff restates and reavers each and every allegation contained in the foregoing paragraphs inclusive, and the acts of the defendant asserted therein, as if fully recited in this paragraph.

15

89. Defendant's acts complained of herein constitute unfair competition under Illinois common law.

90. Defendant's foregoing actions have irreparably harmed Plaintiff.

91. Plaintiff has no adequate remedy at law.

**COUNT V**
**DECEPTIVE TRADE PRACTICES**
**Illinois Compiled Statutes (815 ILCS 510/2)**

92. Plaintiff restates and reavers each and every allegation contained in the foregoing paragraphs, and the acts of the defendant asserted therein, as if fully recited in this paragraph.

93. Defendant's adoption and use in commerce of Plaintiff's POWERCHOCK Trade Dress in connection with Defendant's POWERAMP UXL Product, including but not limited to the overall appearance of Defendant's POWERCHOCK Product, is a deliberate act to pass off Defendant's POWERAMP UXL Product as that of Plaintiff's POWERCHOCK Product.

94. Defendant's adoption and use in commerce of Plaintiff's POWERCHOCK Trade Dress in connection with Defendant's POWERAMP UXL Product, including but not limited to the overall appearance of Defendant's POWERCHOCK Product and marketing and sale thereof in commerce, is likely to cause confusion as to the source or sponsorship of Defendant's POWERAMP UXL product and/or that Defendant's POWERAMP UXL products are approved by Plaintiff, which they are not.

95. Defendant's aforementioned acts are deceptive.

96. Defendant's aforementioned acts are factually misleading and disparage Plaintiff's business and its POWERCHOCK product.

97. Defendant's commercial activities as described above constitute unfair trade practices in violation of Illinois Compiled Statues 815 ILCS 510/2, et, seq.

98. Defendant's foregoing actions have irreparably harmed Plaintiff.

99. Plaintiff has no adequate remedy at law.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury as to all issues properly so tried.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that this Court grant it the following relief:

A. A permanent injunction directing Defendant, and all persons in privity to Defendant, to discontinue all use of the Plaintiff's POWERCHOCK Trade Dress, and all confusingly similar variants thereof, and to cease the advertising, promoting, selling and offering to sell any and all products that infringe Plaintiff's POWERCHOCK trade dress in the United States:

B. Defendant's profits and costs in an amount to be determined at trial.

C. Plaintiff's damages in an amount to be determined at trial and that such damages be trebled.

D. A finding that this is an "exceptional" case under 15 U.S.C. § 1117(a), by virtue of *inter alia,* Defendant's bad faith, willful, and intentional conduct, and, on that basis, award Plaintiff its reasonable attorney's fees in addition to the above relief, pursuant to 15 U.S.C. § 1117(a) and (b); and

17

E. Such other and further relief as the Court may deem necessary, just, and proper.

Respectfully submitted,

By: /s/Steven L. Baron
    Steven L. Baron (ARDC #6200868)
    Brendan Healey (ARDC # 6243091)
    Sharon R. Albrecht (ARDC #6288927)
    BARON HARRIS HEALEY
    150 South Wacker Drive, Suite 2400
    Chicago, IL 60606
    Tel: 312.741.1030
    sbaron@BHHLawFirm.com

    Jess M. Collen (*pro hac vice to follow*)
    Jeffrey A. Lindenbaum (*pro hac vice to follow*)
    James R. Hastings (*pro hac vice to follow*)
    ROTHWELL, FIGG, ERNST & MANBECK, P.C.
    The Holyoke-Manhattan Building
    80 South Highland Avenue
    Ossining, New York 10562
    Tel. (914) 941-5668
    Fax. (914) 941-6091
    jcollen@rothwellfigg.com
    jlindenbaum@rothwellfigg.com
    jhastings@rothwellfigg.com
    *Attorneys for Plaintiff*

Dated: March 11, 2024